BEFORE THE THIRD DIVISION
JUNE 16, 1960

**No. 64300.**—General Ceramics Corporation *v.* United States (R. J. Saunders Co., Inc., a/c The Ferroxcube Corp. of America, Party in Interest), protest 60/6120 (New York).—

JOHNSON, Judge:   This is a protest, filed by an American manufacturer pursuant to section 516(b) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, *infra*, against the collector's assessment of duty at 15 per centum ad valorem under paragraph 214 of the Tariff Act of 1930, as

modified by the General Agreement on Tariffs and Trade, T.D. 51802, on the following merchandise:

1. Merchandise contained in 7 boxes, including square loop rings, covered by Entry No. 475491, and

2. Merchandise contained in 8 boxes, including potcores, circular cores and rings, covered by Entry No. 477281.

It is claimed that said merchandise is properly dutiable at 45 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865.

At a pretrial conference held on June 3, 1960, counsel for the plaintiff stated that the merchandise intended to be covered by the protest was as follows:

Entry No. 475491

Invoice No. 25276—Square loop rings
Invoice No. 25275—Ferroxcube "E" Cores

Entry No. 477281

Invoice No. 25288—Ferroxcube potcores
Invoice No. 25289—Ferroxcube Toroids
Ferroxcube potcores
Square loop rings
Ferroxdure I Blocks, unmagnetized

Counsel for the party in interest then moved to dismiss the protest as to all items except the square loop rings on the ground that these were the only items designated at the initiation of this proceeding pursuant to section 516(b), *infra*, and on the further ground that since plaintiff has not established which of the two entries was first liquidated and since the square loop rings were the only items appearing on both entries, the protest was valid only as to said items.

Section 516(b) of the Tariff Act of 1930, as amended, provides:

(b) CLASSIFICATION.—The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. * * * If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated. Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. * * *

It appears from copies of papers attached to a memorandum submitted by counsel for the plaintiff that, on or about March 7, 1958, the plaintiff requested information as to classification and rates of duty on—

* * * articles made of ferrite or ferro-spinel having a square hysterisis [sic] loop for memory elements in digital electronic computers which are sometimes referred to by trade names such as "Ferramic," "Ferroxcube" or "Cermag."

Thereafter, plaintiff was advised by the Bureau of Customs that it was its practice to classify merchandise of this type as articles wholly or in chief value of earthy or mineral substances, not specially provided for, not decorated, under paragraph 214 of the Tariff Act of 1930, as modified.

A complaint was subsequently filed by the plaintiff, in which reference was made to the request for information and the Bureau's reply, and the Secretary of the Treasury was urged to determine through his duly authorized delegate that imported articles of the class or kind represented by exhibits 1 through 9, submitted with the complaint, were classifiable under paragraph 212 of the Tariff Act of 1930, as modified. Exhibits 1 through 6 were samples of domestic manufacture, alleged to be similar in all material respects to imported wares and articles the subject of the complaint, and exhibits 7 through 9 were samples of similar imported merchandise, which exhibits 1 through 9 are described as Ferrite Cores, "Buttons" (short cylindrical pieces), and Memory Cores. The complaint stated that the articles were made of metallic oxides and described a typical method of production.

The decision upon this complaint, T.D. 54943, states:

The ferrite articles in question are described as articles made of ferrite or ferrospinel having a square hysteresis loop for memory elements in digital electronic computers. The samples submitted are in their natural color, not decorated, and not commercially susceptible of decoration, and consist of rings ranging in size from $\frac{7}{8}$ inch in diameter and $\frac{3}{16}$ inch thick down to $\frac{1}{16}$ inch in diameter and microscopic thickness, U-shaped pieces, the U approximately 1 by $2\frac{1}{2}$ by 1 inches with a square cross-section $\frac{1}{2}$ inch on a side or a circular cross-section $\frac{1}{2}$ inch in diameter, and cylinders $\frac{1}{2}$ inch in diameter and $\frac{1}{2}$ inch thick.

* * * * * * *

After a full consideration of the complaint the Bureau remains of the opinion that the practice of classifying these ferrite articles under paragraph 214 is correct.

From these papers, it appears that while the preliminary request for information made by the plaintiff refers only to ferrite or ferro-spinel articles having a square hysteresis loop for memory elements in digital electronic computers, sometimes referred to by certain trade names, the complaint and the decision thereon involved articles of the class or kind represented by exhibits 1 through 9, which were submitted with the complaint. They were described in the decision, *supra*, as rings, U-shaped pieces, and cylinders.

In *American Manufacturing Co.* v. *United States* (*Burka Bagging Co., party in interest*), 62 Treas. Dec. 305, T.D. 45924, it was held that the claim in an American manufacturer's protest must be the same as that in the complaint filed with the Secretary of the Treasury pursuant to section 516(b) of the Tariff Act of 1930. The court pointed out (p. 311):

If it were not the intention of Congress to have the Secretary pass on any particular claim or claims in the mind of a manufacturer in the first instance, as a condition precedent to his right of further appeal by the filing of a protest for this court to pass upon, then the various steps to be taken by the manufacturer and the Secretary under said section 516 (b) and (c) would seem to have very little meaning or use.

In our opinion, in order to carry out the manifest intent of the law, the provision of said section 516(b) requiring a manufacturer to set—

> forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper,

when filing a complaint with the Secretary of the Treasury, and the almost identical requirement in the event of his filing a protest with the collector by way of appeal from the Secretary's decision, can only be interpreted as meaning that the same claim or claims must be made in the protest before this court as were made in the complaint to the Secretary if this court is to have jurisdiction in the matter.

See also *The Cronite Co., Inc.* v. *United States* (*W. E. Sellers, Doing Business Under the Name of John Sellers & Sons, Party in Interest*), 38 Cust. Ct. 76, C.D. 1847, affirmed *sub nom W. E. Sellers* (*Party in Interest, Doing Business as John Sellers & Sons*) v. *The Cronite Co., Inc.*, 45 C.C.P.A. (Customs) 27, C.A.D. 668.

It is clear that the merchandise and the claims involved in an American manufacturer's protest must be within the scope of the complaint filed with the Secretary of the Treasury under section 516(b), *supra*, since a protest is authorized only after a decision of the Secretary has been made and only as to the classification and rate of duty imposed upon such merchandise as was involved in his decision.

In the instant case, it is evident that more articles were covered by the complaint than square loop rings, but, since no evidence has yet been presented, we cannot determine whether or not all the articles in the protest were within the scope of the complaint. This is a matter for proof at the trial.

While it has been held that a protest filed under section 516(b), *supra*, must be directed against the first liquidation of an entry of merchandise of the class or kind in controversy (*Reed & Barton et al.* v. *United States*, 63 Treas. Dec. 941, T.D. 46422; *The Cronite Co., Inc.* v. *United States* (*W. E. Sellers, Doing Business Under the Name of John Sellers & Sons, Party in Interest*), *supra*), in the instant case, both entries were liquidated on the same day and a letter from the collector states that it is not known which entry was liquidated first. Under these circumstances, a protest directed against both liquidations is valid as to all items covered by the complaint.

For the reasons stated, the motion of the party in interest to dismiss the protest as to all items other than square loop rings will be denied without prejudice to a renewal thereof should it develop at the trial that merchandise not within the scope of the complaint is included in the protest.